IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BARRY GENE KIDD, ) | |
| AIS #212543, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:04-CV-1222-MEF |
| ) | [WO] |
| ) | |
| NURSE MARYWEATHER, et al., ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Barry Gene Kidd ["Kidd"], a state inmate, asserts that the defendants violated his constitutional rights by failing to provide him with adequate medical treatment in January of 2004, which resulted in his contracting a staph infection and pneumonia. Kidd further complains that the defendants denied him medical treatment in retaliation for filing a previous lawsuit against the prison medical care provider in October of 2003.[1] Kidd names nurse Maryweather, Dr. Mark Soonier, nurse Hall-Smith, nurse Bees, nurse Beck, nurse Purnell and nurse Long as defendants in this cause of action.[2]

---

[1] The case to which Kidd refers is *Kidd v. NaphCare Medical Services, Inc., et al.*, Civil Action No. 2:03-CV-989-ID (M.D. Ala. 2006). In such action, Kidd complained that prison medical personnel, including Dr. Soonier and nurse Bees, failed to provide him necessary post-operative treatment after removal of a cyst and denied him appropriate medical treatment for pain in his left hip and right side. The court determined that the defendants had not acted with deliberate indifference to Kidd's medical needs and, therefore, entered summary judgment in favor of the defendants.

[2] The correct names of the defendants are Dr. Mark Sonnier, Angelina Hall-Smith, Aaron Bee, William Beck, Brenda Purnell Lewis and Nancy Long. *Special Report of the Defendants - Court Doc. No. 8* at 2. Nevertheless, for purposes of this Recommendation, the court will refer to the defendants as they are

Kidd seeks monetary damages for the alleged violations of his constitutional rights.

The defendants filed a special report, supplemental special report and supporting evidentiary materials addressing Kidd's claims for relief. Pursuant to the orders entered herein, the court deems it appropriate to treat the defendants' reports as a motion for summary judgment. *Order of February 24, 2005 - Court Doc. No. 14*. Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof and the plaintiff's responses in opposition to the motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## I. FACTS[3]

In January of 2004, Kidd presented as "a heavy smoker – up to three packs a day" and in "obese" physical condition. *Baptist Medical Center Consult Form for January 30, 2004/Court Doc. No. 8-3* at 26. On January 6, 2004, correctional medical personnel provided Kidd prescriptions for medications used in the treatment of acid reflux/ulcers, allergic reactions and bipolar disorder.[4] Specifically, at this time, Kidd possessed

---

identified by Kidd in the complaint.

[3]All relevant facts transpired during Kidd's confinement at the Staton Correctional Facility.

[4]The medications prescribed are hereinafter listed by their brand name followed by their generic name. A generic drug is chemically equivalent to and has the same therapeutic effect as its brand name counterpart. The usages for the medications noted in this Recommendation appear on MedicineNet.com.

prescriptions for Zantac (ranitidine),[5] Atarax/Vistaril (hydroxyzine),[6] and Depakene (valproate sodium).[7] On the evening of January 13, 2004, Kidd reported to the health care unit complaining of a spider bite to the left side of his face. *Inmate Medical Records of Barry Kidd - January 13, 2004 Sick Call Notes/Court Doc. No. 8-3* at 6. Kidd advised the attending nurse that he had "'chills and ache[d] all over.'" *Id.* A check of Kidd's vital signs indicated a slightly elevated temperature of 100.9 degrees but good oxygen saturation of 97%. *Id.* The nurse examined Kidd and noted a "reddened area [with some amount] whitish drainage noted to [left] cheek, skin warm-dry to touch." *Id.* The nurse's assessment indicated "altered tissue integrity" on Kidd's left cheek and she prescribed warm Epsom salt soaks twice a day for two (2) days and Tylenol (acetaminophen) for treatment of Kidd's pain and fever.[8] *Id.*

On January 15, 2004, Kidd reported to the health care unit at 12:15 p.m. again complaining of the bite to his face. *Inmate Medical Records of Barry Kidd - January 15, 2004 Sick Call Notes/Court Doc. No. 8-3* at 5. The attending nurse observed that Kidd's "skin [is] cool [and] clammy. Sweating. [Inmate complains of] body ache, weakness, hot flashes." *Id.* Although Kidd had a temperature of 101 degrees, his oxygen saturation level

---

[5]Zantac (ranitidine) blocks the action of histamine on stomach cells and reduces stomach acid production. This H-2 blocker is effective in the healing and prevention of stomach ulcers and in reducing ulcer pain. It is likewise used to treat gastroesophageal reflux disease.

[6]Atarax/Vistaril (hydroxyine) is an antihistamine used for relief of various allergic reactions.

[7]Depakene (valproate sodium) is utilized in the treatment of bipolar disorder.

[8]Tylenol (acetaminophen) is used for fever reduction and pain relief.

remained at a satisfactory level of 98% and his "[l]ungs [were] clear." *Id*. The nurse provided Tylenol to Kidd during this examination and released him from the health care unit at 12:30 p.m. She referred her assessment of Kidd to Dr. Soonier for his review. *Id*.

Kidd, however, returned to the health care unit a few minutes later at 12:50 p.m. advising he could not "breathe, my chest is sore, fever is worse than last night." *Inmate Medical Records of Barry Kidd - January 15, 2004 Sick Call Notes/Court Doc. No. 8-3* at 4. Nurse E. Ellis, a registered nurse, examined Kidd at this time. She "noted some sweating to face, has red area to [left] cheek area, no drainage @ this time. Lungs clear per auscultation. [Oxygen saturation] @ 97%, temp @ 99 [degrees], no resp[iratory] distress @ this time." *Id*. Nurse Ellis advised Kidd "to apply heat to [his left] jaw area." *Id*.

On January 14, 2004, Kidd completed a sick call request form in which he advised that his "infection from spider bite is spreading. I now have 2 infected places and fever, nausea, diarrhea, feel dizzy, so bad, pain in middle brain around Thalamus area, all my body aches, freezing chill shakes, hurt all over, can't sleep good...." *Inmate Medical Records of Barry Kidd - January 14, 2004 Sick Call Request Form/Court Doc. No. 8-5* at 27. Medical personnel received the sick call request on January 15, 2004 and, based on this request, examined Kidd for a third time on this date. During this examination, Kidd advised the attending nurse, K. Griffin, "'I just don't feel good. My head hurts, my body aches all over. This spider bite on my face has gotten worse, it seems like it's spreading.

4

I feel nauseated.'" *Id*. Nurse Griffin noted an elevated temperature of 101.4 degrees and observed Kidd to be "[a]lert [and] oriented" exhibiting regular respiratory patterns undertaken "[with] ease. Large red raised boil noted to [left] cheek, open center, [some] drainage noted, tender to touch. Bilateral lung field clear." *Id*. Nurse Griffin also referred her assessment of Kidd's condition to Dr. Soonier for review. Upon assessment of the nurses' notes, Dr. Soonier ordered a 10-day prescription for amoxicillin[9] and continued the prescription for Tylenol (acetaminophen). *Inmate Medical Records of Barry Kidd - Medication Administration Record/Court Doc. No. 8-6* at 6.

On January 16, 2004, Kidd reported to the health care unit complaining that his "'lungs and insides hurt. I can't lay down or rest.'" *Inmate Medical Records of Barry Kidd - January 16, 2004 Sick Call Notes/Court Doc. No. 8-3* at 3. The attending nurse observed "∅ diaphoresis, cough or resp[iratory] distress, lungs sound[] cl[ear] x 4 lobes. Skin warm-dry to touch, ∅ [discernable] dyspnea." *Id*.[10] The consulting physician ordered an electrocardiogram ["ECG"/"EKG"] and the nurse performed this procedure on Kidd.[11] The electrocardiogram presented "normal results." *Id*. Kidd received his prescribed

---

[9]Amoxicillin is an antibiotic in the class of antibiotics called penicillins and is used to treat infections of the middle ear, tonsils, throat, larynx, bronchi (pneumonia), urinary tract and skin. Amoxicillin is effective in preventing the spread of many different bacteria including H. influenza, N. gonorrhoea, E. Coli, Pneumococci, Streptococci and certain strains of Staphylococci.

[10]Dyspnea is the medical term for difficulty breathing.

[11]An electrocardiogram is a noninvasive test used to reflect underlying heart conditions by measuring the electrical activity of the heart. This test measures or detects (i) the underlying rate and rhythm of the heart, (ii) placement of the heart in the chest cavity, (iii) evidence of increased thickness of the heart muscle, (iv) evidence of damage to various parts of the heart muscle, (v) evidence of acutely impaired blood flow to the heart muscle, and (vi) patterns of abnormal electric activity.

medications and the nurse emphasized the importance of Kidd's compliance with the ordered "antibiotic therapy. PO [by mouth] fluids encouraged." *Id*.

On January 17, 2004, Kidd reported to the health care unit complaining of "severe [headaches] & pain in [his] face and lips. Productive cough, chest sore down to ribs. Tunnel vision." *Inmate Medical Records of Barry Kidd - January 17, 2004 Sick Call Notes/Court Doc. No. 8-3* at 2. Nurse R. Hall evaluated Kidd and observed a "well developed white male. Resp[iration] even [and] unlabored. Alert & oriented.... Skin [warm and dry] to touch. Small amount coffee ground mucus in a cup test positive for blood. [Left] cheek swollen & red [with] two dime sized inflamed areas." *Id*. Nurse Hall advised Kidd to "increase his fluid intake [and] come to every pill call. Do not miss any dosage[s]." *Id*.

In light of these observations, nurse Hall consulted Dr. Soonier and he ordered that a chest X-ray be scheduled for January 19, 2004. Additionally, Dr. Soonier and other physicians at Staton issued orders for a 14-day prescription for Bactrim (cotrimoxazole),[12] a 14-day prescription for Zyvox (linezolid),[13] a 15-day prescription for Lortab (hydrocodone/acetaminophen),[14] 90-day prescriptions for Depakene (valproate sodium)

---

[12]Bactrim (cotrimoxazole - the combination of sulfamethoxazole and trimethoprim) is used in the treatment of respiratory tract infections and for the treatment or prevention of Pneumocystis carinii pneumonia.

[13]Zyvox (linezolid) is an antibiotic used to treat certain serious bacterial infections often resistant to other antibiotics.

[14]Lortab (hydrocodone/acetaminophen) is a combination of a narcotic, hydrocodone, and a non-narcotic, acetaminophen, utilized in the treatment of severe pain.

and Atarax/Vistaril (hydroxyzine), Lasix (furosemide),[15] and Toprol XL (metoprolol),[16] and a 30-day prescription for Reglan (metoclopramide).[17] Based on the prescriptions for Bactrim and Zyvox, both extremely effective antibiotics, medical personnel discontinued Kidd's perscription for amoxicillin. *Inmate Medical Records of Barry Kidd - Medication Administration Record/Court Doc. No. 8-6* at 6.

On January 19, 2004, Kidd ambulated to the health care unit complaining of rapid heart rate. *Inmate Medical Records of Barry Kidd - January 19, 2004 Sick Call Notes/Court Doc. No. 8-3* at 1. Nurse Hill examined Kidd and noted "anxious shallow resp[iration and] tachycardia." *Id*. The nurse performed an EKG which indicated normal results "except for [elevated] heart rate" and she therefore "[e]ncouraged [Kidd] to slow [his] breathing." *Id*.

On January 21, 2004, medical personnel obtained a culture of the carbuncle on Kidd's left cheek and referred this specimen to an outside laboratory for testing. On January 22, 2004, Dr. Soonier conducted a thorough physical examination of Kidd. Dr. Soonier detected "no wheezes" in Kidd's chest, good bilateral sounds and normal lung fluids. *Inmate Medical Records of Barry Kidd - January 22, 2004 Progress Notes/Court Doc. No. 8-5* at 34. Dr. Soonier also noted that Kidd was "walking slow but no gait

---

[15]Lasix (furosemide) is a diuretic used to flush substances from the body by increasing urine output.

[16]Toprol XL (metoprolol) is prescribed in the treatment of high blood pressure and in regulating certain types of rapid heart rates (tachycardias).

[17]Reglan (metoclopramide) is prescribed for treatment of patients with heartburn and esophagitis due to gastroesophageal reflux.

7

disturbances." *Id*.

On January 23, 2004, Kidd reported to the health care unit and advised "having difficulty breathing. It started all of a sudden. I been coughing up cold mixed [with] blood." The attending nurse evaluated Kidd and observed his "resp[iration] at ease. Lungs sound clear. Non-productive cough noted at this time. No resp[iratory] distress noted...." *Inmate Medical Records of Barry Kidd - January 23, 2004 Sick Call Notes/Court Doc. No. 8-2 at 51*. Kidd returned to the health care clinic on January 25, 2004. The duty nurse "noted [Kidd] standing @ sick call box ... ambulates [with] steady gait." *Inmate Medical Records of Barry Kidd - January 25, 2004 Progress Notes/Court Doc. No. 8-5 at 33*. However, Kidd refused examination at this time. *Id*.

On January 26, 2004, Kidd returned to the health care unit at which time Dr. Soonier examined Kidd in relation to a complaint for shortness of breath. *Inmate Medical Records of Barry Kidd - January 26, 2004 Progress Notes/Court Doc. No. 8-5 at 33*. Dr. Soonier ordered a chest X-ray which revealed pneumonia in both lungs and bilateral pleural effusions.[18] In light of Kidd's being unresponsive to the aggressive antibiotic regimen implemented on January 17, 2004 and followed until January 25, 2004, and his resulting deteriorating condition, Dr. Soonier transferred Kidd to Baptist Medical Center for treatment. *Id*.

Kidd asserts that the defendants failed to provide him with adequate medical

---

[18]Pneumonia is an infection in one or both lungs which is usually caused by bacteria, viruses or fungi. Pleural effusions occur when excess fluid develops between the two membranes that envelop the lungs.

8

treatment for the bite on his face and the respiratory infection suffered in January of 2004. Specifically, Kidd complains that he "was administered anti-biotics but" not properly monitored "to see if the anti-biotics was enough, never once admitted to the [medical observation unit] for observation." *Plaintiff's Complaint - Court Doc. No. 1* at 3.

The defendants deny they acted with deliberate indifference to Kidd's medical conditions and, instead, maintain they provided Kidd with all necessary treatment for his conditions. The undisputed medical records demonstrate that medical personnel evaluated and rendered treatment to Kidd each time he reported to the health care unit, which constituted continuous treatment for Kidd from his first complaint of a spider bite on January 13, 2004 until his referral to Baptist Medical Center on January 26, 2007. The specific treatment prescribed depended upon the observations and evaluations of Kidd's condition by the attending health care professional. Additionally, the medical records establish that medical personnel prescribed various medications in an effort to treat each condition about which Kidd complained. Several antibiotics were prescribed, including one used to treat serious bacterial infections often resistant to other antibiotics (Zyvox), as well as pain relievers and antihistamines. Medical personnel also routinely encouraged Kidd to return to the health care unit any time he needed examination or treatment. It is likewise clear from the medical records that health care personnel monitored Kidd's condition and prescribed medications and treatment for his complaints.

## II. STANDARD OF REVIEW

To survive the defendants' properly supported motion for summary judgment, Kidd is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Anderson v. Liberty Lobby*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). A plaintiff's conclusory allegations of a constitutional violation similarly do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). Thus, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest*

*Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Consequently, where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact.

*Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  In this case, Kidd has failed to demonstrate that there is a genuine issue of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

### III.  DISCUSSION

### A.  Deliberate Indifference

To prevail on an Eighth Amendment claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that those responsible for providing medical treatment acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986).  Specifically, prison medical personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989).

> In articulating the scope of inmates' right to be free from deliberate indifference, however, the Supreme Court has also emphasized that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787.  Medical treatment violates the eighth amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Rogers,* 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.  *See Estelle*, 429 U.S. at 106, 97 S.Ct. at 292 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.");

> *Mandel,* 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985) (mere fact that a prisoner desires a different mode of medical treatment does not amount to deliberate indifference). A prison medical care provider may be held liable under the Eighth Amendment only for acting with deliberate indifference to an inmate's health when the provider knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The undisputed evidentiary materials submitted by the defendants demonstrate that prison medical personnel routinely examined Kidd, evaluated his complaints, and responded to his numerous requests for treatment. *See Inmate Medical Records of Barry Kidd*. These materials likewise establish that Dr. Soonier and other medical personnel prescribed various medications in an effort to treat Kidd's spider bite and respiratory infection. *Id*. It is clear to the court that the course of treatment undertaken by the defendants was not so grossly incompetent or inadequate that it shocks the conscience or violates fundamental fairness.

Although Kidd maintains that he should have been placed in a medical observation

unit and prescribed other antibiotics, the mere fact that he desired a different mode of medical treatment does not amount to deliberate indifference. *Harris*, 941 F.2d at 1505. Kidd fails to present any evidence demonstrating that the defendants consciously disregarded a substantial risk to his health by denying him adequate medical treatment for the bite on his face or respiratory infection contracted in January of 2004. In light of the foregoing, the court concludes that Kidd has failed to establish that the defendants acted with deliberate indifference to his medical needs. Summary judgment is therefore due to be granted in favor of the defendants.

## B. Retaliation

Kidd complains that the defendants denied him medical treatment in retaliation for his filing a lawsuit against Dr. Soonier in October of 2003. *Plaintiff's Complaint - Court Doc. No. 1* at 3 ("I filed an 1983 on the Dr. I mentioned earlier ... in October of two thousand and three. Which would ... point to an retaliation claim under the first amendment."). Throughout the pleadings filed in this case, the defendants deny they failed to provide Kidd with adequate medical treatment for his medical needs and further argue that they rendered necessary and appropriate medical treatment in addressing Kidd's complaints. *Defendants' February 21, 2005 Special Report - Court Doc. No. 8*; *see also Defendants' September 29, 2006 Supplemental Special Report - Court Doc. No. 26*. The defendants therefore assert that they did not deprive Kidd of medical treatment for any reason, neither in retaliation for his filing a previous cause of action nor otherwise.

*Defendants' September 29, 2006 Supplemental Special Report - Court Doc. No. 26.*

To present a retaliation claim cognizable under § 1983, a prisoner must demonstrate that (i) he engaged in a constitutionally protected activity, (ii) he suffered adverse treatment simultaneously with or subsequent to such activity, and (iii) a causal connection existed between the protected activity and the adverse action. *Donnellon v. Fruehauf Corporation*, 794 F.2d 598, 600-601 (11th Cir. 1986); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2nd Cir. 2004); *Morales v. Mackalm*, 278 F.3d 126, 131 (2nd Cir. 2002); *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Proper assertion of a claim for retaliation requires that a prisoner allege that correctional officials intended to retaliate for his exercise of a right protected under the Constitution and, but for the retaliatory motive, the adverse act complained of would not have occurred. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996). It is essential, however, that federal courts "carefully scrutinize retaliation claims" brought by prisoners challenging actions of correctional personnel. *Woods*, 60 F.3d at 1166. "[C]ourts must approach prisoner claims of retaliation with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2nd Cir. 1983). This is [necessary because prisoners'] ... claims of retaliation are ... easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a

15

constitutional violation--can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by a preponderance of the evidence, which once established raises a presumption that prison officials retaliated against the inmate. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Merely alleging the ultimate fact of retaliation is not sufficient to meet this burden. *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods*, 60 F.3d at 1166. Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to establishing retaliation. *Morales*, 278 F.3d at 131; *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations."). If an inmate establishes a prima facie case, the burden then shifts to prison officials to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the prison official retaliated against the inmate. This may be done by the prison official articulating a legitimate, non-retaliatory reason for the adverse decision or action, which is clear, reasonably specific and worthy of credence. The prison official has a burden of production, not of persuasion, and thus does not have to persuade a court that he or she actually was motivated by the reason advanced. *Burdine*, *supra*. Once the

prison official satisfies this burden of production, the inmate then has the burden of persuading the court by sufficient and admissible evidence that the proffered reason for the adverse decision is a pretext for retaliation. *Id*.

Kidd asserts, and the records of this court demonstrate, that he filed a civil action in October of 2003 challenging the constitutionality of medical treatment provided to him, thus satisfying his burden of establishing the first requisite element – that he had engaged in a protected activity prior to January of 2004 – of a viable retaliation claim. *Donnellon*, 794 F.2d at 600-601. Notwithstanding the foregoing, Kidd makes only a conclusory allegation that the defendants denied him adequate medical treatment during January of 2004 in retaliation for his filing the previous lawsuit. The defendants have demonstrated, however, through affidavits and other relevant admissible evidence, that they did not undertake any adverse action against Kidd; rather, as previously determined, the defendants provided Kidd with necessary and appropriate medical treatment for his complaints. Kidd offers only his conclusory, unsupported allegation that the defendants denied him medical treatment and that such denial occurred in retaliation for initiation of a prior lawsuit. As this court must "carefully scrutinize retaliation claims" arising from adverse actions of correctional personnel, *Woods*, 60 F.3d at 1166, and evaluate such claims "with skepticism and particular care[,]" *Dawes*, 239 F.3d at 491, it is clear that Kidd's conclusory allegation of retaliation is insufficient to establish a constitutional violation. Consequently, the defendants are entitled to summary judgment on the retaliation claim as Kidd has failed to

establish he suffered any adverse treatment due to filing a lawsuit in 2003.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The motion for summary judgment filed by the defendants be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before June 21, 2007 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981,

*en banc)*, adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

    DONE, this 8th day of June, 2007.

                                        /s/ Susan Russ Walker
                                        SUSAN RUSS WALKER
                                        UNITED STATES MAGISTRATE JUDGE